UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                                                     :

NORTH FORK PARTNERS                     :
INVESTMENT HOLDINGS, LLC,         :
                                                     :

                     Plaintiff,         :              20-cv-2444 (LJL)
                                                     :

                    -v-               :             OPINION AND ORDER
                                                       :

W. CHRISTOPHER BRACKEN, WILLIAM    :
HENAGAN, RICHARD SPENCER, CHRISTOPHER :
ERB, and KENNETH F. ELIAS          :
                                                     :

                    Defendants.     :
                                                     :

------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_09/09/2021__

LEWIS J. LIMAN, United States District Judge:

      Defendants W. Christopher Bracken ("Bracken"), William Henagan ("Henagan"),

Richard Spencer ("Spencer"), Christopher Erb ("Erb"), and Kenneth F. Elias ("Elias") move to

dismiss the complaint against them pursuant to Federal Rules of Civil Procedure 12(b)(6), 9(b),

12(b)(2).[1]

      For the following reasons, the motions to dismiss are granted in part and denied in part.

---

[1] Defendants Erb and Elias renew their motion to dismiss for lack of personal jurisdiction, which
this Court has already addressed at Dkt. No. 50.  They "recognize, however, that the Court
previously decided that personal jurisdiction may be exercised over Elias and Erb," and indicate
that they "wish to preserve the lack of personal jurisdiction defense for adjudication at the
summary judgment phase."  Dkt. No. 62 at 19.  The Court's earlier decision is law of the case, as
Defendants acknowledge, they have identified no new facts that call that conclusion into
question at this stage. *See Pepper v. United States*, 562 U.S. 476, 506 (2001) ("[W]hen a court
decides upon a rule of law, that decision should continue to govern the same issues in subsequent
stages in the same case." (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983))).

**BACKGROUND**

The Court assumes familiarity with its prior opinions in this case.  *See N. Fork Partners Inv. Holdings, LLC v. Bracken*, 2020 WL 2521448 (S.D.N.Y. May 18, 2020); *N. Fork Partners Inv. Holdings, LLC v. Bracken*, 2020 WL 6899486 (S.D.N.Y. Nov. 23, 2020).

Plaintiff North Fork Partners Investment Holdings, LLC ("Plaintiff" or "North Fork") is a Delaware limited liability company.  Dkt. No. 55 ¶ 40.  Bracken is the former CEO, director, and member of Patriot Finance, LLC ("Patriot"), a limited liability company engaged in the business of providing consumer loans.  *Id.* ¶¶ 41, 46, 49.  Henagan and Spencer are directors and members of Patriot.  *Id.* ¶¶ 41-43.  Erb and Elias are both corporate officers of Congressional Bank.  *Id.* ¶¶ 44-45.

The action arises out of a $650,000 mezzanine loan Plaintiff provided to Patriot pursuant to a Mezzanine Loan and Security Agreement and Promissory Note on August 3, 2018 (the "Mezzanine Loan").  *Id.* ¶ 50.  Prior to the Mezzanine Loan, Congressional Bank had entered into a separate loan with Patriot, which was senior to Patriot's loan.  *Id.* ¶ 52.  On the same day Plaintiff entered into the Mezzanine Agreement with Patriot, Plaintiff also entered into a Subordination and Intercreditor Agreement with both Patriot and Congressional Bank.  *Id.* ¶ 52.  Patriot ultimately defaulted on both the Mezzanine Loan and the loan from Congressional Bank, and Patriot's assets were eventually transferred to Congressional Bank, causing Plaintiff financial injury.  *Id.* ¶¶ 35, 110, 114.

Plaintiff alleges that it was the victim of fraud—that at the time it entered into the agreements with Patriot and Congressional Bank, Defendants knew that Patriot was in poor financial health but nonetheless represented otherwise and issued fraudulent financial reports to induce Plaintiff to enter into the agreements and to hide the fact that they were making conveyances from Patriot's assets.  The allegations are in three parts.  First, Plaintiff alleges it

2

was induced to make the loan by false representations by Erb and Elias. Second, Plaintiff alleges that, after Plaintiff made the loan, Bracken, Henagan and Spencer submitted fraudulent financial reports to Plaintiff.  Third, Plaintiff alleges a scheme to divert Patriot's assets to Bracken, Henagan, and Spencer and to third parties.

On the basis of those allegations, Plaintiff asserts claims for (1) fraudulent conveyances under New York Debtor and Creditor Law § 273 against Henagan and Spencer, *id.* ¶¶ 138-51; (2) fraud against Erb and Elias, *id.* ¶¶ 152-158; and (3) fraud against Bracken, Henagan, and Spencer, *id.* ¶¶ 159-165.

## PROCEDURAL HISTORY

Plaintiff filed its initial complaint in New York State Supreme Court on February 21, 2020.  Dkt. No. 1-1.  Defendants timely removed the action to this Court pursuant to the Court's diversity jurisdiction.  Dkt. No. 1.  On March 27, 2020, Erb and Elias moved to dismiss for failure to state a claim and for lack of personal jurisdiction, which the Court granted without prejudice to Plaintiff filing an amended complaint.  Dkt. No. 17.  Plaintiff filed the amended complaint on June 19, 2020.  Dkt. No. 24.  On July 2, 2020, Erb and Elias moved to dismiss the amended complaint, Dkt. No. 33; on August 6, 2020, Bracken moved to dismiss the amended complaint, Dkt. No. 41, and on August 10, 2020, Henagan and Spencer moved to dismiss the amended complaint, Dkt. No. 44.  On November 23, 2020, the Court granted the motions to dismiss without prejudice.  Dkt. No. 50.  Plaintiff filed the second amended complaint on December 23, 2020.  Dkt. No. 55.  Discovery has been stayed during the pendency of the motion.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that

is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556; *accord Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011). However, although the Court must accept all factual allegations of a complaint as true, it is "not bound to accept as true a legal conclusion couched as factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). The ultimate issue "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 235-36 (1974)); *see also DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) ("In ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." (internal quotation marks and citation omitted)).

A claim for fraud is subject to the particularity requirements of Federal Rule of Civil Procedure 9(b). A plaintiff must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent; (2) identify the speaker; (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir.

2004); *see also Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir. 2001) (stating that to plead fraud with particularity, a complaint must "specify the time, place, speaker, and content of the alleged misrepresentations" and "should explain how the misrepresentations were fraudulent"). Allegations that are "conclusory and unsupported by assertions of fact" are not sufficient to meet the Rule 9(b) standard.  *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986).

## DISCUSSION

## I.      Motions to Dismiss Fraud Claims for Failure to Plead with Particularity

In its prior opinion, the Court dismissed the amended claim for failure to plead fraud with particularity under Federal Rule of Civil Procedure 9(b).  The Court held that:

> Each of [the allegations that statements were fraudulent] suffers from a different deficiency, but altogether, Plaintiff has failed to plead when each fraudulent statement was made, which statements were fraudulent, or why they were fraudulent.  For example, Plaintiff does not identify: the dates of statements made "throughout April and May 2018"; the dates of omissions made by Erb and Elias; the dates of the monthly collateral reports; and the statements within the monthly collateral reports that were false and that would indicate why Patriot's financial condition was not "excellent."

Dkt. No. 50 at 30.  However, the Court also held that "Plaintiff pleads scienter for the fraud claims."  *Id.*

Plaintiff's second amended complaint attempts to correct the deficiencies identified by the Court with the amended complaint, and to add particular allegations of fraud.  Defendants argue that the second amended complaint still does not meet the requirements of Rule 9(b).[2]

---

[2] To the extent that Plaintiff's second amended complaint seeks to assert a claim against Defendants for *omissions* rather than misrepresentations, Defendants' motions to dismiss are granted.  First, Plaintiff seemingly abandons any such argument at least with regard to Defendants Erb and Elias in their briefing: "[A]lthough the fraud of the Defendants Erb and Elias [sic] no one claims that there was an obligation to disclose.  The claim is they knew of the fraud and on top of that made further fraudulent representations." Dkt. No. 67 at 8.  Moreover, even if Plaintiff does wish to state a claim based on omissions, that claim fails.  As a general matter, "an omission does not constitute fraud unless there is a fiduciary relationship between the parties." *Cobalt Partners, L.P. v. GSC Cap. Corp.*, 944 N.Y.S.2d 30, 35 (1st Dep't 2012) (internal

A.      Defendant Bracken

Defendant Bracken moves to dismiss the second amended complaint, arguing that "Plaintiff has again presented nothing more than 'unadorned' allegations of fraud that do not remotely meet the requirements of Rule 9(b)."  Dkt. No. 57 at 2.  The second amended complaint's allegations of fraud by Defendant Bracken revolve around the allegation that he submitted multiple fraudulent reports to Plaintiff.  Dkt. No. 57 at 1; Dkt. No. 65 at 4.

Bracken argues that the second amended complaint does not "contain any hint about 'which statements [by Bracken] were fraudulent or why they were fraudulent,' as the Court required Plaintiff to provide,"  and that "Plaintiff possesses the collateral reports that it claims contain false or misleading information, yet it has still failed to identify specifically even a single line item, entry, loan, or piece of information its principals received from Bracken that was false or misleading."  Dkt. No. 57 at 8.  If this were true, the second amended complaint would be insufficiently particular.  But it is not.  Plaintiff points out that it "detailed the statements of Defendant Bracken's fraudulent reports[,] . . . identified Defendant Bracken as the person submitting such reports[,] . . . described where and when the fraudulent statements were made and explained why they were fraudulent."  Dkt. No. 65 at 4 (citing Dkt. No. 55 ¶¶ 69-101).  These paragraphs do make particular allegations about the collateral reports:

---

quotation omitted).  There was no fiduciary duty between Bracken, Henagan, and Spencer and Plaintiff.  "A debtor-creditor relationship, standing alone, does not create a fiduciary duty of the latter to the former."  *Cruz v. TD Bank, N.A.*, 855 F. Supp. 2d 157, 176 (S.D.N.Y. 2012) (internal quotation omitted).  There also was no fiduciary duty between Erb and Elias and Plaintiff, as their relationship arises solely out of the fact that they are both Plaintiff's creditors.  Plaintiff does not allege any other basis for a duty to disclose.  Specifically, the "special facts" doctrine is not availing.  That doctrine applies "in 'business dealings' between parties to a prospective transaction."  *Matter of Merkin v. Berman*, 1 N.Y.S.3d 21 (1st Dep't 2014).  Defendants Erb and Elias, and Congressional Bank, were not parties to the transaction between Plaintiff and Patriot.  And Plaintiff has alleged fraud against Defendants Bracken as well as Henagan and Spencer for misrepresentations they made *after* the transaction occurred.  As such, the special facts doctrine does not apply to any of the Defendants.

73.     On October 2, 2018, Bracken emailed a collateral report to the Plaintiffs containing fraudulent and false statements.

74.     Specifically, the collateral report falsely indicated that the "Eligible Loans" owned by Patriot were greater than the actual Eligible Loans owned by Patriot. This false statement made it appear that Patriot's balance sheet had higher quality assets than Patriot actually owned, thereby making it appear that Patriot was in excellent financial condition.

75.     Had the collateral report reflected the actual balance of Eligible Loans, the poor financial condition would have been revealed and Plaintiff would have had legal rights to immediate redemption.  Accordingly, the collateral report's falsehoods were fraudulent in that they contained intentional misrepresentations made in order to prolong the initial fraud initially made by Defendants Erb and Elias that Patriot LLC was in good financial shape.

76.     Bracken emailed subsequent collateral reports to the Plaintiffs containing the identical fraudulent and false statements as described in Paragraph 75 on the following dates, 11/1/18, 12/3/18, 1/2/19, 2/4/19, 3/6/19, 4/8/19, 5/7/19, 6/6/19.

Dkt. No. 55 ¶¶ 73-76.  These allegations satisfy Rule 9(b): they specify what statement was fraudulent (the quantity of Eligible Loans); the speaker (Bracken); where and when the statements were made (on specific dates, in collateral reports provided via email); and why they were fraudulent (the reported balance of Eligible Loans was greater than the actual balance as demonstrated by the later reports).

Bracken also argues that the allegations of fraud against him are not sufficiently distinct from the allegations of fraud against the other defendants.  Dkt. No. 57 at 11.  This argument, too, is unavailing.  The second amended complaint does make specific allegations about Bracken's role in the alleged fraud.  It alleges that "Defendants Bracken, Henagan, and Spencer were to maintain and deliver monthly reports"; that "Defendant Chris Bracken was in charge of sending these reports on a monthly basis"; that Bracken emailed a fraudulent collateral report on October 2, 2018; and that Bracken emailed subsequent fraudulent collateral reports on eight additional dates.  Dkt. No. 55 ¶¶ 69, 70, 73, 76; *see also Eternity*, 375 F.3d at 187 (stating that to satisfy Rule 9(b), a plaintiff must identify the fraudulent statements, the speaker, where and

when the statements were made, and why the statements are fraudulent).  The allegations in the second amended complaint plead Defendant Bracken's alleged fraud with particularity.

### B.   Defendants Henagan and Spencer

Defendants Henagan and Spencer also move to dismiss the second amended complaint, arguing that it "fails to remediate the deficiencies of [the] First Amended Complaint," and that "Plaintiff has added virtually nothing in the way of particularity regarding allegedly fraudulent actions of Defendants Henagan and Spencer."  Dkt. No. 64 at 2.  They argue that "Plaintiff's fraud claim against Hengan and Spencer is based almost entirely on allegedly fraudulent reports authored by Defendant Bracken."

The second amended complaint does make several specific allegations regarding Defendant Henagan and Spencer's involvement in providing the allegedly fraudulent collateral reports even before Defendant Bracken was fired.  The complaint alleges that "Defendants Bracken, Henagan and Spencer, were to maintain and delivery monthly reports," that "Defendants Henagan and Spencer knew that the date [sic] submitted in the reports was false and went along with the fraud of Bracken," that on a monthly basis, "Defendants Henagan and Spencer approved those reports," and that "Defendant Henegan [sic] emailed collateral reports to the Plaintiff containing the identical fraudulent and false statements on the following dates, 11/4/18 and 11/15/18."  Dkt. No. 55 ¶¶ 69, 70, 84.  Defendants Henagan and Spencer also argue that "[e]ven as to the allegedly fraudulent reports themselves, which Plaintiff alleges were authored by Bracken, Plaintiff never identifies specific misstatements or false information, or which such statements were relied on by Plaintiff."  Dkt. No. 64 at 6.  This argument fails, for the same reason Defendant Bracken's identical argument failed—the second amended complaint *does* identify specific information as false, and alleges that it was relied on by Plaintiff.

Defendants Henagan and Spencer also argue that the allegations that they alone continued to submit fraudulent reports *after* Defendant Bracken was fired are deficient, because "Plaintiff alleges that defendant Henagan sent a fraudulent collateral report on August 5, 2019, which failed to reflect 'the actual balance of Eligible Loans,'" but "also alleges, however, that the August 5, 2019 report led Plaintiff to the discovery of Bracken's alleged fraud, because it 'indicat[ed] a substantial increase in the number of collateral loans that were between 60-90 days delinquent,' which was 'a mathematical impossibility' based on the number of 30-60 days delinquent loans in the July report sent by Bracken." Dkt. No. 64 at 8 (quoting Dkt. No. 55 ¶¶ 83, 89). They argue that "Plaintiff alleges that the August 5, 2019 report sent by Henagan offered truthful information that corrected prior falsehoods and thereby revealed Bracken's fraud, and also that it was false and continued Bracken's fraud." *Id.*[3] Plaintiff in opposition argues that "[t]he fact that the report indicated an increase in 60-90 day delinquent [sic] and allowed Plaintiff to further confirm the fraud, does not take away from the allegations in ¶¶ 83, 84 that such report was continuously fraudulent because it made it appear, again, that Patriot actually owned more quality assets." Dkt. No. 66 at 10-11. To allege fraud with sufficient particularity to satisfy Rule 9(b), Plaintiff must explain *why* the alleged misstatements are false, including their factual basis for believing the statements were false. *See Krulewich v. Covidien*, 498 F. Supp. 3d 566, 581 (S.D.N.Y. 2020). For the earlier reports, Plaintiff does allege a clear factual basis for their belief that this Eligible Loans figure was false—it was inconsistent with

---

[3] Defendants Henagan and Spencer similarly argue that allegations that they concealed that Bracken was fired because of the fraudulent reports are inconsistent with allegations that they continued Bracken's fraud. Dkt. No. 64 at 8. However, Plaintiff in opposition to Henagan and Spencer's motion to dismiss states that "Henagan and Spencer did not dismiss Bracken because he committed a fraud," indicating that they do not allege that Henagan and Spencer fraudulently concealed that Bracken was fired because of the reports. Dkt. No. 11.

the figure in later reports. However, for the August 5 report, Plaintiff alleges no factual basis for their belief that the Eligible Loans figure was *still* false. Therefore, Plaintiff has failed to state a claim that the August 5 report—or any subsequent report—was fraudulent.

### C.     Defendants Erb and Elias

#### 1.     Misrepresentations

Defendants Erb and Elias also move to dismiss the second amended complaint, arguing that "the new pleading adds nothing to cure the defects previously identified in the First Amended Complaint." Dkt. No. 62 at 2. They argue that "Plaintiff's allegations do not indicate that Elias and Erb made any knowingly false statements." *Id.* at 14.

The second amended complaint alleges several specific fraudulent statements by Erb and Elias. These include the unqualified statements:

- "[L]ending to Patriot would be a great opportunity [sic] North Fork Partners to make a profit." Dkt. No. 55 ¶ 55.

- "Patriot's financial condition is excellent." *Id.* ¶ 56.

- "[They] were doing everything to help Patriot grow and saw great potential for Patriot." *Id.* ¶ 60.

- "Congressional Bank would 'partner with' the with [sic] Plaintiff and do more business with the Plaintiff." *Id.* ¶ 61.

- "The collateral was performing well." *Id.* ¶ 62.

- "This was a 'good business opportunity for Plaintiff.'" *Id.* ¶ 64.

For each of these statements, the second amended complaint pleads who made the statement,[4] when the statement was made, and why it was false, including the undisclosed fact that at the

---

[4] Defendants repeatedly make the argument that the complaint pleads that *both* Erb and Elias made these identical statements and it follows that Plaintiff has not pled who made the statement with particularity. However, Plaintiff's allegation that both Erb and Elias made many of these statements is taken as true on this motion to dismiss and satisfies the 9(b) pleading requirement.

time Patriot was in default to Congressional, was insolvent, and was not profitable.  *Id.* ¶¶ 2, 12, 55-56.  Defendants argue, however, that these statements are merely "nonactionable opinion."  Dkt. No. 62 at 14.

First, the statements that "Congressional Bank would 'partner with' the with [sic] Plaintiff and do more business with the Plaintiff" is a statement of future intent, not of present fact.  Dkt. No. 55 ¶ 61.  "Absent a present intent to deceive, a statement of future intentions, promises, or expectations is not actionable on the grounds of fraud.  A complaint based on a statement of future intention must allege facts to show that the defendant, at the time the promissory representation was made, never intended to honor or act on his statement."  *Lanzi v. Brooks*, 388 N.Y.S.2d 946, 948 (3rd Dep't 1976).  Here, Plaintiff has not pled facts that suggest that Erb and Elias never intended that Congressional Bank partner with North Fork and do more business with North Fork.  As such, this statement cannot sustain a claim of fraud.

Many of the remaining statements—that lending to Patriot would be a great opportunity to make a profit, that Erb and Elias saw great potential for Patriot, that this was a good business opportunity, and that the collateral was performing well—are statements of opinion or projections for the future.  "Although statements of opinion generally are not actionable in a fraud cause of action, . . . statements of opinion may nevertheless be actionable as fraud if the plaintiff can plead and prove that the holder of the opinion did not subjectively believe the opinion at the time it was made and made the statement with intent to deceive."  *M&T Bank Corp. v. McGraw Hill Cos., Inc.*, 5 N.Y.S.3d 783, 785 (4th Dep't 2015).  In other words, "a fraud claim based on an expression of opinion 'is actionable in an appropriate case not because the opinion is "objectively" wrong.  Rather, in an appropriate case it is actionable because the speaker either did not in fact hold the opinion stated or because the speaker subjectively was

aware that there was no reasonable basis for it . . . .  In the first instance, the speaker will have

lied as to his or her subjective mental state.  In the second, he or she implicitly would have

represented that there was a reasonable basis for the statement of opinion, knowing that the

implicit representation was false.'"  *Id.* (quoting *IDK Int'l S.A. v. Bank of Am.*, 2014 WL

1377801, at \*1 (S.D.N.Y. Mar. 31, 2014)); *see also CPC Int'l Inc. v. McKesson Corp.*, 514

N.E.2d 116, 125 (N.Y. 1987) ("Finally, we reject the contention that the financial projections

were mere opinions which could not be the basis for common-law fraud.  Plaintiff alleges that

defendants made the projections knowing they were false and unreasonable and that they were

not based on Mueller's actual financial condition.  Thus, as alleged in the complaint, the

projections of Mueller's expected financial performance constitute 'material existing fact[s],

sufficient to support a fraud action.'").

　　Here, although many of the statements that Plaintiff alleges Erb and Elias made do

represent opinions and future projections, Plaintiff pleads that that Erb and Elias knew that many

of statements were false when they made them based on their knowledge of Patriot's finances—

Plaintiff pleads that Elias and Erb knew (but did not disclose) that Patriot was having difficulty

making its payments to Congressional or was in default status and that it would need and use the

funds loaned by Plaintiff not for future growth but to pay down the Congressional debt, Dkt. No.

55 ¶¶ 55, 56, 62, 64—and that they made the unqualified statements nonetheless in order to

mislead Plaintiff.  As such, these statements are not merely nonactionable opinion, because

Plaintiff has plead facts to establish that "the holder of the opinion did not subjectively believe

the opinion at the time it was made and made the statement with intent to deceive."  *M&T Bank

Corp.*, 5 N.Y.S.3d at 785; *see also In re Vivendi Universal, S.A.*, 381 F. Supp. 2d 158, 182

(S.D.N.Y. 2003) (holding, in the securities fraud context, that "opinion or 'soft information'"

was pled to be actionable at the motion to dismiss stage where defendants "continued to represent to the public that Vivendi was financially solid, despite being aware of the financial precipice on which it stood when its debt rating was almost downgraded, and the possibility that it would need to declare bankruptcy soon"); *Novak v. Kasaks*, 216 F.3d 300, 315 (2d Cir. 2000) (holding, in the securities fraud context, that statements that "the inventory situation was 'in good shape' or 'under control' while [defendants] allegedly knew the contrary was true" were "false and misleading" and actionable).[5]

Last, the alleged statement that "Patriot's financial condition is excellent" is not a future projection or statement of opinion, but rather a statement of material existing fact, which Plaintiff pleads Erb and Elias knew was false at the time that they made it; this statement too is actionable on a claim of fraud. *See In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 2021 WL 1178216, at *45 (S.D.N.Y. Mar. 29, 2021) (holding, in the securities fraud context, that statements "which reference [the company's] 'strong financial position,' 'strong balance sheet,' and 'improved financial strength,' are not merely optimistic, forward-looking statements," but are "'grounded in historical facts (false revenue numbers)' and 'plausibly designed to mislead investors into believing' that [the company's] 'present (as well as its future) was rosier than reality,'" were "properly considered 'more than mere puffery.'" (quoting *Fresno Cnty. Emps.' Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 548 (S.D.N.Y. 2017))).

---

[5] Although several of the cited cases arise in the securities fraud context, rather than the common-law fraud context, "[t]he elements of common law fraud are much the same as the elements of a claim of securities fraud . . . . In particular, the element of reasonable reliance is much the same in New York common law as in federal securities law." *Ashland Inc. v. Morgan Stanley & Co., Inc.*, 700 F. Supp. 2d 453, 471 (S.D.N.Y. 2010).

2.        **Justifiable Reliance**

Defendants Erb and Elias further argue that "even assuming that Plaintiff could identify an actionable misrepresentation by Elias or Erb," Plaintiff cannot establish justifiable reliance as a matter of law because it failed to satisfy its due diligence requirements.  Dkt. No. 62 at 13. Defendants are correct that Plaintiff's second amended complaint is devoid of any allegations that Plaintiff conducted an independent analysis of Patriot's finances before entering into the Mezzanine Loan; rather, Plaintiff alleges that it agreed to enter into the loan "[i]n complete reliance on the false representations made by Defendants Erb and Elias described herein."  Dkt. No. 55 ¶ 67.

"Whether or not reliance on alleged misrepresentations is reasonable in the context of a particular case is intensely fact-specific and generally considered inappropriate for determination on a motion to dismiss."  *Maloul v. Berkowitz*, 2008 WL 2876532, at *2 (S.D.N.Y. July 23, 2008); *see also Country World, Inc. v. Imperial Frozen Foods Co.*, 589 N.Y.S.2d 81, 82 (2nd Dep't 1992) ("In a fraud action, whether a party could have ascertained the facts with reasonable diligence so as to negate justifiable reliance is a factual question.").  Courts have, however, dismissed cases for failure to satisfy justifiable reliance where "a sophisticated plaintiff had indisputable access to truth-revealing information."  *Maloul*, 2008 WL 2876532 at *3 (internal quotation omitted).

Erb and Elias argue that here, Plaintiff could simply have "inspected Patriot's books," as it "expressly reserved the right to," rather than "rely[ing] on Bracken's summary data."  Dkt. No. 62 at 11.  But both the Mezzanine Loan and Security Agreement, wherein Erb and Elias identify this right, and the Bracken reports, occurred *after* Plaintiff had decided to enter into the loan, in reliance on Erb and Elias's alleged misrepresentations.  The fact that Plaintiff may subsequently have failed to exercise a right to verify information in reports provided after Plaintiff made the

loan may be relevant to a claim of justifiable reliance on those reports, but is not relevant to a claim of justifiable reliance on Erb and Elias's statements *before* the loan or the loan agreement. As such, Defendants have not demonstrated as a matter of law that Plaintiff had access to information that would have revealed the misrepresentations and unreasonably failed to examine it. *See Maloul*, 2008 WL 2876532, at *3 ("Defendants seek a ruling that if a plaintiff performs no due diligence, this will categorically defeat a fraud action at the motion to dismiss stage, but cite no case that unequivocally endorses that principle. New York cases have only held that no due diligence is unreasonable where there is a publicly available document that would refute the false statements, or a document that is actually in plaintiff's possession."). Thus, whether Plaintiff was justified in relying on Defendants' alleged misrepresentations in deciding to enter into the Mezzanine Loan is a fact-specific question that will have to await discovery and cannot be resolved at this stage. *See id.* at *4 (noting that whether reliance was reasonable without affirmative independent investigation was not appropriate for resolution on a motion to dismiss); *Anwar v. Fairfield Greenwich Ltd.*, 782 F. Supp. 2d 372, 449 (S.D.N.Y. 2010) (noting that the question of reasonable reliance was not appropriate for a motion to dismiss); *Hamilton Exhibition, LLC v. Imagine Exhibitions, Inc.*, 2019 WL 2590639, at *4 (S.D.N.Y. June 11, 2019) (noting that whether reliance was reasonable without affirmative independent investigation was not appropriate for resolution on a motion to dismiss).

## II.   Motion to Dismiss Fraudulent Transfer Claim

Defendants Henagan and Spencer also move to dismiss Count I of the second amended complaint, the fraudulent transfer claim. In its earlier opinion, the Court held that:

> Plaintiff brings two sets of allegations under Section 273. The first set alleges that Bracken—along with Henagan and Spencer—altered the monthly collateral reports to hide that they were conveying assets from Patriot to themselves as direct beneficiaries. The second set alleges that Patriot overpaid Cooney, and unnecessarily paid "third parties and unsecured creditors," with funds that "should

15

have been set aside for the payment of the loan issued by the Plaintiff." Plaintiff's fraudulent conveyance claim based on the first set of allegations survives, but fails as to the second set of allegations. . . . However, Plaintiff failed to plead the fraud claims with particularity and those fraud claims were the basis for this Court's exercise of pendent personal jurisdiction over Bracken, Henagan, and Spencer on the fraudulent conveyance claim. Because Plaintiff does not adequately plead a claim of fraud, the Court cannot exercise pendent personal jurisdiction over the fraudulent conveyance claim.

Dkt. No. 50 at 33-34. Regarding the second set of allegations, about alleged payments to third

parties, the Court held that these claims failed:

As to the second set, Plaintiff does not allege that Bracken, Henagan, and Spencer were beneficiaries, transferors, or transferees of the conveyances. "New York law does not recognize 'a creditor's remedy for money damages against parties who . . . were neither transferees of the assets nor beneficiaries of the conveyance.'" *Roselink Invs., L.L.C. v. Shenkman*, 386 F. Supp. 2d 209, 226–27 (S.D.N.Y. 2004) (quoting *F.D.I.C. v. Porco*, 552 N.E.2d 158, 159 (1990)). Plaintiff therefore cannot succeed on its fraudulent conveyance claim against them unless it alleges facts sufficient to support a corporate veil-piercing theory. *See, e.g.*, *SungChang Interfashion*, 2013 WL 5366373, at *11-12 (permitting fraudulent conveyance claims against individual executive of corporation to proceed based on veil-piercing theory). Plaintiff has alleged only in conclusory terms that Henagan, Spencer, and Bracken "abused the corporate form to make payments for unnecessary third party expenses and the costs of Rooney," AC ¶ 118, but this does not meet the "heavy burden" required to pierce the corporate veil, *TNS Holdings v. MKI Sec. Corp.*, 703 N.E.2d 749, 751 (1998). Specifically, a "plaintiff seeking to pierce the corporate veil must demonstrate that a court in equity should intervene because the owners of the corporation exercised complete domination over it in the transaction at issue and, in doing so, abused the privilege of doing business in the corporate form, thereby perpetrating a wrong that resulted in injury to the plaintiff." *City of Almaty v. Ablyazov*, 278 F. Supp. 3d 776, 798 (S.D.N.Y. 2017) (quoting *E. Hampton Union Free Sch. Dist. v. Sandpebble Builders, Inc.*, 884 N.Y.S.2d 94, 98 (2d Dep't 2009)). "Factors to be considered in determining whether the owner has abused the privilege of doing business in the corporate form include whether there was a failure to adhere to corporate formalities, inadequate capitalization, commingling of assets, and use of corporate funds for personal use." *E. Hampton Union Free Sch. Dist.*, 884 N.Y.S.2d at 99; *see also Sesa*, 2020 WL 6382919, at *4. Plaintiff has not alleged any of those factors and has not included the recipients of the conveyances, Patriot, or Congressional Bank as defendants in this action.

*Id.* at 34-35.

In the second amended complaint, Plaintiff again asserts the fraudulent conveyance

claim, but only against Defendants Henagan and Spencer. Dkt. No. 55 ¶¶ 138-151. Defendants

Henagan and Spencer move to dismiss the claim, arguing that Plaintiff still "fails to plead an actionable claim of fraudulent conveyance against Henagan and Spencer with respect to alleged payments to third parties," because Plaintiff has not added "allegations sufficient to support a claim of corporate veil-piercing with respect to this claim."  Dkt. No. 64 at 11-12.  The second amended complaint reiterates the allegations regarding payments to third parties.  Although Plaintiff has added additional allegations about these Defendants' friendship with Mr. Cooney, the recipient, *see, e.g.*, Dkt. No. 55 ¶ 120, these allegations are still insufficient to sustain any claim for fraudulent conveyance to third parties, and Plaintiff has not met the heavy burden required to pierce the corporate veil.  Indeed, Plaintiff does not even argue this point in its opposition to Henagan and Spencer's motion to dismiss.  As such, once again "Plaintiff's fraudulent conveyance claim based on the first set of allegations survives, but fails as to the second set of allegations."  Dkt. No. 50 at 33.[6]

## CONCLUSION

Defendant Bracken's motion to dismiss is DENIED.  Defendant Henagan and Spencer's motion to dismiss is GRANTED IN PART and DENIED IN PART.  Defendant Elias and Erb's motion to dismiss is GRANTED IN PART and DENIED IN PART.

The Clerk of Court is respectfully directed to close Dkt. Nos. 56, 58, 60, and 63.

SO ORDERED.

Dated: September 9, 2021
      New York, New York
                                        LEWIS J. LIMAN
                             United States District Judge

---

[6] With regard to the first set of allegations, the claim of fraud against Henagan and Spencer survives this motion to dismiss and provides a basis for this Court's exercise of pendent personal jurisdiction over Henagan and Spencer on the fraudulent conveyance claim.  *See* Dkt. No. 50 at 24, 26.